UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITCHEL OSMAN,

        Plaintiff,

v.

INTERNATIONAL FREIGHT LOGISTICS,
LTD., and TOWNE AIR FREIGHT, L.L.C.,
d/b/a TOWNE AIR FREIGHT – MI, L.L.C.,

        Defendants.

_____/

Case No. 08-11767

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court are Plaintiff Mitchel Osman's Motion for Summary Judgment, (doc. 30), Defendant Towne Air Freight, L.L.C.'s ("TAF") Motion for Summary Judgment, (doc. 32), and Defendant International Freight Logistics, Ltd.'s ("IFL") Motion for Summary Judgment, (doc. 34). In his amended complaint, Osman alleges that he ordered a lamp that was destroyed during shipment with Defendants. (Doc. 15). For the reasons discussed below, the Court **DENIES** each party's Motion for Summary Judgment.

**II.    STATEMENT OF FACTS**

In early December 2007, Osman purchased a ceiling lamp made of opaline glass and brass for $12,000 from a Phillipe Denys booth at the Design Miami show in Miami,

Florida. Osman states that Philippe Denys told him that IFL would pack, ship, and deliver the lamp. In mid-December, Nancy Timmerman ("Osman's wife") contacted IFL and spoke with Bibi Karim, who confirmed that IFL had received, packed, and shipped the ceiling lamp to New York. Osman's wife confirmed that the payment due to IFL was $450, which she understood to cover packing, shipping, and insurance. She was not offered a choice of liability insurance and, after insisting upon full insurance coverage, was told that full insurance coverage was included. She then arranged for delivery and paid IFL $450.

Laura Mischke, President of IFL, stated that Philippe Denys arranged for IFL to first transport the lamp, along with various other goods sold at the Design Miami show, to its warehouse in New York and then to arrange to transport the various pieces of art, including the lamp, to their respective buyers. No IFL employee was either involved in packing the lamp or observed the packing of the lamp such that it would have been possible to determine the lamp's condition, because the lamp was already sealed when IFL took control of the crate containing the boxed lamp. IFL arranged for AZ Miami to pick the sealed crates up from the Phillipe Denys booth and to transport them to AZ Miami's warehouse. IFL then picked the crates up and transported them to its New York offices. Once the crates arrived in New York, IFL emptied the crates. The box containing the lamp showed no sign of damage or breakage. IFL then arranged for TAF to transport the lamp to Osman.

TAF delivered the lamp to Osman on January 7, 2008. Upon opening the package, Osman and his wife discovered that the glass portions of the lamp had been "shattered." Osman's wife contacted both TAF and IFL in mid-January to file a damage

claim, and IFL denied the Osman's claim.  In response to Osman's request for admissions in this case, both IFL and TAF admitted that the cause of the damage to the lamp was inadequate packaging.

Joe Dooley, a TAF employee, states that TAF was contacted by IFL to ship the item at issue in this case from JFK airport to Osman's business address in Michigan. TAF only later learned that the shipment was an item of lamp art.  TAF accepted the shipment pursuant to its normal Terms and Conditions, which stated that TAF does not knowingly accept objects of art for shipment.  TAF had no contact nor agreement with Osman regarding the shipment and the carton provided to TAF for shipment was sealed and not open to inspection.  Dooley states that TAF was not involved with packing the contents of the carton and is not a household goods carrier.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).  However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on

allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2).

**IV.     ANALYSIS**

Under the 1906 Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, common carriers are liable for damage they cause to property they receive for transportation. Plough, Inc. v. Mason & Dixon Lines, 630 F.2d 468, 470 (6th Cir. 1980). This amendment was intended "to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119 (1950). In order to establish a *prima facie* case under the Carmack Amendment, a plaintiff must show (1) that the item was delivered to the common carrier in good condition; (2) that the item arrived in a damaged condition; and (3) the amount of damages. Missouri Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964).

If a plaintiff makes out a *prima facie* case under the Carmack Amendment, the burden shifts to the defendant to show that (1) it was free from negligence; and (2) that the damage to the goods was due to "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." Missouri Pac. R.R. Co., 377 U.S. at 137-38; Plough, Inc., 630 F.2d at 470.

*1.     Osman's prima facie case*

There is a genuine issue of material fact regarding whether the lamp was delivered to IFL in good condition due to the fact that there is both conflicting evidence concerning who packaged the lamp and a lack of evidence concerning the lamp's condition when it was delivered to IFL.  In particular, Osman has presented evidence that IFL told his wife that it had received and packed the lamp.  This indicates that IFL received the lamp in undamaged condition since IFL concedes that the lamp was damaged due to improper packaging.  Although this evidence is hearsay, it appears that it would be admissible as an admission by a party-opponent.  See FED.R.EVID. 801(d)(2).  IFL asserts that this evidence is not admissible because the IFL employee who made these statements to Osman's wife had no knowledge of the facts and was acting outside the scope of her employment, but IFL has not offered any evidence to support these assertions.

Osman claims that the invoice from Philippe Denys indicates that Philippe Denys does not provide packing services.  But in actuality, the invoice only indicates that Philippe Denys does not provide transport or shipping.  There is no evidence showing that Phillippe Denys does not provide packing services.

In opposition to Osman's evidence, IFL contends that its bill of lading indicates that it was only picking the packages up, and was not involved in packing them. But, it is not clear that the document IFL presented to the Court is the lamp's bill of lading.  In particular, the bill of lading does not indicate that items are being taken to New York.  Instead, the bill of lading only indicates that it is for items being consigned to Philippe Denys in Belgium.  Furthermore, there is no evidence, apart from counsel's assertions, that the lamp was a part of this bill of lading.

5

IFL also has presented the affidavit of Mischke, the company president. She states that, before the lamp was provided to IFL, it was packaged in a box that was then sealed inside a crate. Therefore, there is conflicting evidence concerning who packaged the lamp. This conflict, combined with the lack of any direct evidence concerning the lamp's condition at the time it was delivered to IFL, creates an issue of material fact regarding whether the lamp was already damaged when it was delivered to IFL.

*2.     IFL and TAF's defense under the Carmack Amdendment*

Just as there is a genuine issue of material fact in Osman's *prima facie* case regarding whether the lamp was delivered to IFL in good condition, there also is a genuine issue of material fact regarding IFL's and TAF's defense under the Carmack Amendment. Under the Carmack Amendment, a carrier is not liable if it can show that the damage to the goods was due to an act of the shipper. See Missouri Pac. R.R. Co., 377 U.S. at 137. In addition, Osman concedes that inadequate packaging was the cause of the damage to the lamp. Therefore, if Phillippe Denys inadequately packaged the lamp, it was the cause of the damage, and IFL and TAF are not liable under the Carmack Amendment. See id. at 137-38. As already discussed, there is a genuine issue of material fact regarding whether Phillippe Denys provided the lamp's inadequate packaging and, accordingly, there is a genuine issue of material fact regarding whether IFL and TAF have a defense under the Carmack Amendment.

*3.     IFL and TAF's terms and conditions*

### i.  IFL

IFL claims that its terms and conditions limit its liability because, under those terms and conditions, it is not liable for the negligence of others.  Therefore, it would not be liable if it was Phillippe Denys' inadequate packaging that caused the damage to the lamp.  IFL, however, does not need to resort to its terms and conditions in this case.  As the preceding analysis indicates, IFL is not liable under the Carmack Amendment if Philippe Denys packaged the lamp.

### ii.  TAF

The terms and conditions of TAF's bill of lading indicate that TAF does not accept liability for, among other things, works of art.

The Supreme Court has indicated how connecting carriers are to be treated under the Carmack Amendment:

> For the purpose of Fixing the liability, the several carriers must be treated, not as independent contracting parties, but as one system; and the connecting lines become in effect mere agents, whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier.

Missouri, K. & T. Ry. Co. of Texas v. Ward, 244 U.S. 383, 387 (1917).  It is undisputed that IFL was obligated to have the lamp delivered to Osman's home in Michigan under the arrangements it made with Philippe Denys and Osman.  Allowing TAF's separate bill of lading with IFL to limit its liability would undermine the Carmack Amendment's purpose of "reliev[ing] shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods," because it would prevent Osman from being able to obtain full recovery from

7

the delivering carrier (TAF) as the Carmack Amendment allows. Reider, 339 U.S. at 119; see 49 U.S.C. § 14706(a)(1) and (d)(1).

As such, the terms of the original bill of lading issued by IFL cover the entire shipment of the lamp to Osman under the Carmack Amendment, and TAF's separate bill of lading with IFL does not reduce Osman's rights under the Amendment. See Ward, 244 U.S. at 387; Texas & Pac. Ry. Co. v. Leatherwood, 250 U.S. 478, 480-81 (1919) ("The bill of lading given by the initial carrier embodies the contract for transportation from point of origin to destination; and its terms in respect to conditions of liability are binding upon the shipper and upon all connecting carriers, just as a rate properly filed by the initial carrier is binding upon them.").

TAF argues, however, that IFL was acting as Osman's agent or as a freight forwarder and, therefore, IFL had the authority to bind Osman to TAF's terms and conditions. In Great N. Ry. Co. v. O'Connor (Great Northern), the Supreme Court addressed a case involving a shipper that employed a transfer company to arrange for the shipment of her goods. 232 U.S. 508, 513 (1914). The transfer company arranged for a carrier to transport the goods at a tariff rate that limited the carrier's liability to less than the true value of the goods. The goods were destroyed while in the carrier's possession. The Supreme Court held that the carrier had the right to assume that the transfer company, to whom the transfer of the goods had been entrusted, could agree upon the terms of the shipment. Id. at 514.

> The carrier was not bound by [the shipper's] private instructions or limitation on the authority of the transfer company, whether it be treated as agent or forwarder. If there was any undervaluation, wrongful classification, or violation of her instructions, resulting in damage, the plaintiff has her remedy against that company.

Id. at 514-15.

The Supreme Court recently addressed Great Northern in the context of a claim under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.* in Norfold S. Ry. Co. v. Kirby, 543 U.S. 14 (2004). In that case, Kirby hired International Cargo Control ("ICC"), a freight forwarding company, to arrange for the shipment of goods from Australia to Huntsville, Alabama. Id. at 19. ICC issued Kirby a bill of lading with contractual liability limitations. ICC then hired a German ocean carrier to transport the goods. Id. at 21 The German ocean carrier issued a bill of lading to ICC that had a greater limitation of liability than did the bill of lading between ICC and Kirby. The German ocean carrier's bill of lading also contained a "Himalaya Clause" extending the benefits of its liability limitation to its agents, carriers, and independent contractors. The German ocean carrier then hired a railroad company to transport the goods for the land leg of their journey. The train containing the goods derailed, and the goods were damaged.

The Supreme Court held, "When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." Id. at 33. The Court stated that reliance on agency law was misplaced because "[t]he principle derived from Great Northern does not require treating ICC as Kirby's agent in the classic sense. It only requires treating ICC as Kirby's agent for a single, limited purpose: when ICC contracts with subsequent carriers for limitation on liability." Id. at 34. Accordingly, the Court held "that intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability limitations with carriers downstream." Id.

Great Northern and Kirby may be distinguished from the present case, however, because they involved shippers who employed a freight forwarder or transfer company to arrange for the shipment of their goods.  Accordingly, the shipper knew that the freight forwarder or transport company would have to make arrangements for other carriers to transport the goods.  See Trans-Pro Logistic, Inc. v. Coby Electronics Corp., 2009 WL 36824 at *5, No. 05-1759 (E.D.N.Y. Jan. 6, 2009).  In this case, however, IFL was a carrier, not a freight forwarder[1] or transfer company, and Osman contracted with IFL for delivery of the lamp to his home in Michigan.  In addition, there is no evidence indicating that Osman should have known or anticipated that IFL would arrange for another carrier to transport the lamp to his home in Michigan.  Accordingly, IFL did not have the authority to limit Osman's right to recover under the Carmack Amendment by granting greater liability protection to connecting carriers.  To hold otherwise would prevent the Carmack Amendment from "reliev[ing] shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods," by allowing shippers to obtain full recovery from either the receiving or delivering carrier.  Reider, 339 U.S. at 119; see 49 U.S.C. § 14706(a)(1) and (d)(1).  Therefore, TAF's terms and conditions do not limit its liability under the Carmack Amendment.

## V.    CONCLUSION

---

[1] Under 49 U.S.C. § 13102(8), a freight forwarder is "a person holding itself out to the general public (*other than as a pipeline, rail, motor, or water carrier*) to provide transportation of property for compensation and in the ordinary course of its business . . . ."  (emphasis added).

Accordingly, the Court **DENIES** Osman's Motion for Summary Judgment, (Doc. 30), TAF's Motion for Summary Judgment, (Doc. 32), and IFL's Motion for Summary Judgment, (Doc. 34).[2]

**IT IS SO ORDERED.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: March 11, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

        s/Bernadette M. Thebolt
        DEPUTY CLERK

---

[2] In their motions, IFL and TAF argue that Osman should not receive attorney's fees if his suit is successful. See 49 U.S.C. § 14708(d). As the Court is denying Osman's motion for summary judgment, it would be premature for the Court to address these arguments at this time.